1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11   KIM ADAMS,                          )   Case No.: 1:17-cv-00464-JLT
                                         )
12              Plaintiff,               )   ORDER DENYING DEFENDANTS' MOTION
                                         )   FOR SUMMARY JUDGMENT
13        v.                             )
                                         )   (Doc. 47)
14   COUNTY OF KERN, et al.,             )
                                         )
15              Defendants.              )
                                         )
16   _____)

17        Plaintiff claims that while she was on felony probation between 2012 and 2015, she was

18   repeatedly harassed, molested and sexually assaulted by her Kern County Probation Officer, Reyes

19   Soberon, Jr. Plaintiff alleges two causes of action: (1) Violation of civil rights under 42 U.S.C. § 1983

20   against Defendants David M. Kuge and Soberon; and (2) *Monell* liability against Defendants County

21   of Kern and Kern County Probation Department. (*See* Doc. 1.)

22        Defendants County of Kern and Kuge seek summary judgment pursuant to Rule 56 of the

23   Federal Rules of Civil Procedure. (Doc. 47.) Specifically, Defendants contend that (1) Plaintiff cannot

24   establish an individual capacity claim of liability against Kuge, and (2) Plaintiff cannot establish a

25   factual basis for *Monell* liability. (*See id.*) Subsequent to the filing of the motion for summary

26   judgment, the Court granted the parties stipulation to dismiss Defendant Kuge. (Docs. 54, 55.)

27   Accordingly, as Defendant Kuge has been dismissed from this action, the motion is **MOOT** as to the

28   first claim. For the following reasons, the motion for summary judgment is **DENIED** as to the second

1

1    claim related to *Monell* liability.

2    **I.      Background and Undisputed Material Facts[1]**

3              Plaintiff claims that she was molested, sexually assaulted, harassed and intimidated by

4    Defendant Soberon between April 2012 and June 2015, while on parole and under the supervision of

5    Soberon, who was a Kern County Probation Officer. (UMF 1.)

6              Soberon was assigned to work in the County's Probation Office located at 1415 Truxtun

7    Avenue in downtown Bakersfield, California. (UMF 7.) While on probation, Plaintiff reported to the

8    probation office every month where she met with Soberon in his office. (PUF 1; Doc. 53-1, Adams

9    Depo. 94:18-95:6.) At their first meeting, Plaintiff testified that Soberon took her into his office and

10   "grabbed [her] and, like, hugged [her], and he rubbed his hands across [her] chest and [her] bottom."

11   (PUF 2; Adams Depo. 105:15-106:8.) By the second or third visit, Plaintiff testified that Soberon

12   touched her in an inappropriate manner underneath her clothing, with "skin on skin" contact, without

13   her consent. (PUF 3; Adams Depo. 106:11-108:3.) Plaintiff also testified that Soberon would threaten

14   Plaintiff, telling her "to think of him as [her] daddy . . . and that if [she didn't] follow all of his

15   demands, then he can make [her] disappear . . . he can make things happen to [her]; and that he knew

16   all of the police. And he said he knew several detectives. A lot of times he said all of the detectives."

17   (PUF 4; Adams Depo. 111:2-10.)

18             Plaintiff testified that Soberon continued to grope her in the manner described and this

19   "happen[ed] on every visit with him in his office." (PUF 6; Adams Depo. 113:12-18.) Plaintiff also

20   testified that Soberon would close the door but not all the way, and that if someone were to walk by,

21   they would be able to see into the office. (PUF 6; Adams Depo. 113:19-114:4.) Plaintiff added that she

22   was aware of other employees at the probation office that saw Soberon groping and molesting her.

23   (PUF 7; Adams Depo. 114:5-8.)

24

25             ───────────────────────────

26   [1] This section is a summary of both the undisputed facts and the parties' positions in this action. Defendants filed
     a "Joint Statement of Undisputed Facts" in support of the motion. (Doc. 48.) The Court will refer to the undisputed
     material facts in this statement as "UMF."

27             The parties also each prepared separate statements of facts to support their respective positions. (Doc. 49
     [Defendants]; Doc. 53-6 [Plaintiff].) To the extent any separate facts identified by the parties are undisputed **and the**

28   **Court found the evidence cited supports the facts identified**, these are identified as "DUF" for the Defendants'
     Undisputed Facts and "PUF" for Plaintiff's Undisputed Facts.

1      Plaintiff described an occasion when a female officer conducted a home visit with Soberon,

2 and the female officer saw Soberon "acting inappropriately" with Plaintiff. (PUF 9, 10; Adams Depo.

3 129:2-9, 135:12-25.) Plaintiff could not recall the name of the female officer, but testified that she

4 could identify her. (PUF 10; Adams Depo. 129:25-130:1.)

5      On June 5, 2015, Plaintiff reported the allegations of misconduct by Soberon to probation

6 officer, Edith Mata, and others. (UMF 14, 8:2[2].) Mata and a co-worker, Greg Gause, immediately took

7 Plaintiff to their supervisor, Jon McGowan, who took photographs of her phone and took a report.

8 (UMF 9:2.) By June 11, 2015, an internal affairs investigation began. (UMF 10:2.) The two assigned

9 investigators, Laura Rivas and Shaun Romans, interviewed Plaintiff three times between June 11 and

10 June 19. (*Id.*)

11      Plaintiff testified that when she spoke to Mata about Soberon, Mata took her phone and started

12 scrolling through it, then Plaintiff later realized that "[Mata] had to have called [Soberon] because he

13 immediately called [Plaintiff], threatening [her]." (PUF 11; Adams Depo. 177:18-178:11, 179:12-16.)

14 Thereafter, Plaintiff testified about Soberon yelling at her and threatening her, "saying that he knew

15 that [Plaintiff] talked to Mata," and asking her why she gave her phone to Mata; Plaintiff testified that

16 she had to tell someone about Soberon because he already knew she told, and "he was going to kill me

17 anyway." (PUF 12; Adams Depo. 181:1-20.) Plaintiff further testified that "everyone was just kind of

18 dissuading me from doing anything." (PUF 13; Adams Depo. 192:23-24.) Plaintiff described that

19 when she went into the office she talked to Mata, who brought in another one or two persons who

20 could not help before McGowan came in and asked Mata "why have you not been her officer," and

21 seemed upset that Mata allowed Soberon to do this. (PUF 14; Adams Depo. 193:6-194:1, 194:17-25.)

22 Plaintiff testified that McGowan seemed upset at Mata "for not being [her] officer because apparently

23 [Mata] was going to be [her] – supposed to be [her] officer." (PUF 14; Adams Depo. 193:17-20.)

24 Furthermore, when asked if Mata wanted to "kind of slip this under the rug [and] not get Soberon in

25 trouble," Plaintiff affirmed this. (PUF 15; Adams Depo. 196:18-23.)

26      At his deposition, Soberon stated that he could not recall who he assaulted when he was a

27

28 [2] In the "Joint Statement of Undisputed Facts," the numbering of facts begins again at 1 for Issue No. 2; the numbering as set forth here reflects facts listed under Issue No. 2. (*See* Doc. 48 at 3.)

1   peace officer. (PUF 17[3]; Doc. 53-2, Soberon Depo. 105:14-25.) Soberon also testified that he could

2   not recall a single conversation or interaction he had with Plaintiff and would be unable to describe

3   what she looked like when he was her probation officer. (PUF 19; Soberon Depo. 114:2-15.) Soberon

4   further testified that he never challenged his administrative leave and his termination with the

5   probation department. (PUF 20; Soberon Depo. 128:10-15.)

6          Plaintiff claims that the County of Kern maintains and permits policies and customs that

7   expressly or tacitly encourage the use of threats and sexual abuse by law enforcement officers. (UMF

8   1:2.) Both the Kern County Civil Service Rules and the Kern County Probation Administrative

9   Manual prohibit unlawful and/or dishonest conduct. (UMF 2:2.) Plaintiff claims that the County is

10  deliberately indifferent to the training of officers in the use of threats and sexual abuse. (UMF 3:2.)

11         Plaintiff claims that the County ratified the alleged wrongful acts of Soberon. (UMF 5:2.) The

12  County Probation Department placed Soberon on administrative leave when the allegations of Plaintiff

13  were reported. (UMF 6:2.) Thereafter, the Probation Department opened an internal affairs

14  investigation, which led to a discipline review board that found civil service and policy violations.

15  (*Id*.) Plaintiff claims that the County covered up the alleged conduct by Soberon. (UMF 7:2.)

16  **II.    Legal Standards for Summary Judgment**

17         The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to

18  see whether there is a genuine need for trial." *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,*

19  475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no

20  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

21  R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary

22  judgment, when there is no genuine issue of material fact as to a particular claim or portion of that

23  claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 769 n.3 (9th Cir. 1981)

24  ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of

25  a single claim…") (internal quotation marks and citation omitted).  The standards that apply on a

---

[3] In the Plaintiff's separate statement of facts, the numbering in the table of facts ends at 16, however, there are still additional facts included in the table. (*See* Doc. 53-6 at 5-6.) The Court has assumed the numbering continued for purposes of this order.

4

motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).  A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e); *Matsuhita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c).  The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law.

*Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III.     Evidence before the Court

In evaluating a motion for summary judgment, the Court examines the evidence provided by the parties, including pleadings, deposition testimony, answers to interrogatories, and admissions on file. *See* Fed. R. Civ. P. 56(c). On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Court has reviewed each of the evidentiary objections identified by the Defendants related to the opposition for summary judgment. (*See* Doc. 57.) However, the Court declines to address each of the individual objections identified. *See Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) (observing "it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised").

To the extent Defendants object to evidence on the grounds of relevance, such objections are inappropriate, because the Court must determine whether a fact is relevant and material as part of "the summary judgment standard itself." *Burch v. Regents of the Univ. of Cal.*, 433 F.Supp. 2d 1110, 1119 (E.D. Cal. 2006). Toward that end, any evidence deemed irrelevant was omitted from the Court's summary of the facts and contentions above. Further, the Court, as a matter of course, has not factored into its analysis any statements identified by either party that are speculative or represent a legal conclusion. *See Burch*, 433 F. Supp.2d at 1119 ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment") (citation omitted, emphasis in original). Thus, the Court has relied upon only admissible evidence. In addition, the Court will consider only those facts that are supported by admissible evidence and to which there is no genuine dispute.

**IV.     Discussion and Analysis**

Defendant seeks summary adjudication of the remaining cause of action against County of Kern, specifically the claim involving *Monell* liability. (*See generally* Doc. 50; *see also* Doc. 1.) Defendant contends that Plaintiff cannot establish a factual basis for *Monell* liability. (Doc. 50 at 10-14.)

Municipalities or other governmental bodies may be sued as a "person" under Section 1983 for the deprivation of federal rights. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978). However, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *Monell*, 436 U.S. at 691. Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains. *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). Thus, a government entity may be liable under Section 1983 when its policy or custom causes a deprivation of federal rights. *Id.* at 694.

A plaintiff may . . . establish municipal liability by demonstrating that (1) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery,* 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)). Here, Plaintiff premises the liability of the County of Kern on the fact that the County knew that Soberon was molesting Plaintiff for years but did nothing. (*See* Doc. 53 at 6-9.)

Defendant argues that Plaintiff cannot establish the existence of an officially adopted policy that is unconstitutional. (Doc. 50 at 11.) Specifically, Defendant alleges that Plaintiff has never requested the production of any of the County's written policies and none have been produced in discovery to Plaintiff, and Plaintiff has failed to designate any experts in this case who could criticize a written policy. (*Id*.) Defendant contends that Plaintiff cannot identify any specific policy that expressly or tacitly encourages the use of threats and sexual abuse. (*Id*.) Defendant alleges that the County has policies that prohibit unlawful and dishonest conduct. (*Id*.)

However, a custom can be demonstrated without reference to a written policy or experts

criticizing it. A custom must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). For instance, Plaintiff presents evidence that these crimes happened "rampantly and repeatedly, occurring mostly in a cramped County office and in the presence of multiple witnesses who worked for the County, over a span of three years." (Doc. 53 at 7.) Plaintiff claims that she would visit Soberon monthly during this period of time and that "he would molest her every time she was forced to come visit him." (*Id*.) Plaintiff also references her testimony that Soberon revealed that "he had many friends in the Kern County Probation Office who knew that [Plaintiff] was his." (*Id*. at 7-8.)

Plaintiff also asserts that Soberon brought another female officer along with him during a house visit and "molested [Plaintiff] in front of the accompanying officer, who saw [Soberon] molesting her." (Doc. 53 at 8.) Regarding this house visit, Defendant contends that Soberon ordered the female officer to search the house and that it was while the officer was out of the room that Soberon allegedly assaulted Plaintiff. (Doc. 56 at 3.) Defendant also alleges that Plaintiff ultimately claimed that the female officer "must have seen the molestation, based upon the mere fact that Soberon had his hands on her after the female officer entered." (*Id*.) Defendant notes Plaintiff testified the female probation officer was out of the room during the time Soberon molested her, but he was touching her when the female entered the room. (*See id*.) Though the defendant would have the Court speculate, without any evidence of how Soberon was touching her, that the female probation officer saw only "a pat down or restraint" of Plaintiff, this is contrary to the rules governing Rule 56 motions. Rather the Court must construe the evidence in favor of the non-moving party. Coupling the evidence that Soberon had his hands on her after the female officer entered the room and Plaintiff's assertion that the female officer saw unlawful contact, constitutes a dispute of material fact precluding summary judgment.

Plaintiff asserts also that multiple County agents witnessed Soberon's acts, but Plaintiff "was the only one who actually spoke up, despite being afraid for her life to do so." (Doc. 53 at 8.) Plaintiff argues that the County adopted a policy of inaction and silence in response to the molestation that was

taking place on County premises and in front of County employees. (*Id*.) In reply, Defendant contends that Plaintiff does not offer competent evidence that any other Kern County employee or administrator observed a sexual assault and failed to intercede or report it. (Doc. 56 at 2.)

However, Plaintiff's deposition testimony demonstrates that at her monthly visits with Soberon in his office, he would close the door but not all the way, and people could see into the office. (Doc. 56 at 2; PUF 6; Adams Depo. 113:19-114:4.) Plaintiff testified that she was aware of other employees at the probation office who saw Soberon groping and molesting her. (PUF 7; Adams Depo. 114:5-8.) Defendant argues that Plaintiff's testimony was contradicted by a further clarifying question. (Doc. 56 at 3)  However, the "clarifying" question creates more questions. For example, the question asked whether she knew of anyone who saw Soberon molesting her "ín *his* office." Id., emphasis added. She responded, "Not in *the* office . . ." Id., emphasis added. The Court cannot determine whether she was saying she knew of no witnesses, that the witnesses were in the hallway adjacent to Soberon's office rather than in Soberon's office itself, whether no one at the Kern County Probation Office ever witnessed any unlawful acts by Soberon inflicted on her while she was at the Office's premises, whether she meant that the acts occurred on the premises but not in Soberon's office or whether she meant something different entirely. Once again, the Court must indulge all inferences in favor of Plaintiff.

Regarding claims of a cover up, Defendant argues against the allegation that the County tried to prevent Plaintiff from reporting the matter by stating that a report was taken the day she reported it and an internal affairs investigation had been opened within a week. (Doc. 56 at 4.) Defendant argues that Plaintiff's claim that her sexual assault was known to, permitted and covered up by top level officers of the County is belied by the undisputed evidence that the County immediately investigated the allegations, found policy violations and disciplined Soberon. (Doc. 50 at 14.) However, the contention that the County disciplined Soberon after Plaintiff's reporting and acted in response to her reporting does not refute the allegation that the County could have taken actions that discouraged or prevented Plaintiff from reporting the matter earlier.

In viewing the facts in the light more favorable to Plaintiff, the Court finds that Plaintiff provides sufficient evidence to raise a genuine question of disputed material fact with respect to the

County of Kern's *Monell* liability. Whether the Defendant's practice amounts to a custom or policy permitting unconstitutional behavior is for the jury to decide, given Plaintiff's evidence of molestation. Accordingly, Plaintiff's *Monell* claim survives Defendant's summary judgment challenge.

**V.     Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1.     Defendants' motion for summary judgment (Doc. 47) is **MOOT** as to Defendant Kuge in Plaintiff's first cause of action; and

2.     Defendants' motion for summary judgment is **DENIED** as to Defendant County of Kern in Plaintiff's second cause of action.

IT IS SO ORDERED.

Dated:   **August 16, 2020**             **/s/ Jennifer L. Thurston**
                                      UNITED STATES MAGISTRATE JUDGE